CITY OF MENOMINEE *v.* COUNTY OF MENOMINEE.

1. STATUTES—CONSTRUCTION—RELATED ACTS.

In controversy between city and county in which such city was located respecting apportionment of funds for highway purposes derived from taxes on gasoline and motor vehicles, not only provisions of statutes under which such taxes are imposed and distributed are considered but also related statute which provides for transition of control of township roads from township to county highway authority and supply of funds therefor (Act No. 130, Pub. Acts 1931; Act No. 7, § 34, subd. [4], Pub. Acts 1934 [1st Ex. Sess.], amending 1 Comp. Laws 1929, § 4651; Act No. 8, § 19, subd. [d(4)], Pub. Acts 1934 [1st Ex. Sess.], amending 1 Comp. Laws 1929, § 3594).

2. TAXATION—MOTOR VEHICLE WEIGHT AND GASOLINE TAXES—DISTRIBUTION—LEGISLATIVE INTENT.

Under statutes providing for distribution of so-called motor vehicle weight and gasoline tax funds the legislature is *held*, to have intended to specify the particular purposes with designated priorities for which a portion of such funds might be used in the respective counties except as in a limited measure the power of appropriation was delegated to boards of supervisors (Act No. 7, § 34, Pub. Acts 1934 [1st Ex. Sess.], amending 1 Comp Laws 1929, § 4651; Act No. 8, § 19, Pub. Acts 1934 [1st Ex. Sess.], amending 1 Comp. Laws 1929, § 3594).

3. EVIDENCE — JUDICIAL NOTICE — TRANSFER OF MAINTENANCE OF TOWNSHIP HIGHWAYS TO COUNTIES.

It is a matter of common knowledge that as a result of Act No. 130, Pub. Acts 1931, annually during a transition period the maintenance of thousands of miles of what had theretofore been township highways was transferred from the townships to the respective counties.

4. TAXATION—COUNTIES—CONSTRUCTION OF STATUTES—ADDITIONAL MILEAGE OF TOWNSHIP ROADS.

Specification in statutes that a designated portion of funds derived from motor. vehicle weight and gasoline taxes should ''be used for the maintenance of additional mileage of township roads in any county selected and determined upon in

accordance with the provisions'' of an act setting forth method of accomplishing transition of control of 20 per cent. of the township highway mileage annually from township to county highway agencies, providing funds for latter agencies, and gradually reducing maximum rate of taxation by townships for highway purposes *held*, to provide such county agencies with additional funds for the additional burden even after all the roads had been taken over by the county agencies, especially in view of the fact that amendments enacted subsequent to the completed transfer of authority continued to embody such provision and added authority of boards of supervisors to appropriate for the maintenance of city and village streets, hence resolution of board of supervisors making appropriation for ''roads heretofore selected, determined upon and taken over into the county road system'' under the act providing for transition of control was within power of board to pass (1 Comp. Laws 1929, § 3594, as amended by Act No. 41, Pub. Acts 1932 [1st Ex. Sess.], Act No. 8, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 340, Pub. Acts 1937; § 4651, as amended by Act No. 7, Pub. Acts 1934 [1st Ex. Sess.], and Act No. 320, Pub. Acts 1937; and Act No. 130, Pub. Acts 1931).

5. Statutes—Construction—Highways—Automobiles.

Sense in which legislature uses language in a statute relative to funds for highways must be determined in the light of known facts concerning the development of highways in this State as accentuated, if not necessitated, by the public's use of the motor vehicle (1 Comp. Laws 1929, §§ 3594, 4651, as amended; Act No. 130, Pub. Acts 1931).

6. Costs—Public Question.

No costs are allowed in proceeding between plaintiff city, located in defendant county, and such county to determine construction of statutes relative to distribution of motor vehicle weight and gasoline tax moneys, a public question being involved (1 Comp. Laws 1929, §§ 3594, 4651, as amended; Act No. 130, Pub. Acts 1931).

Appeal from Menominee; Bell (Frank A.), J. Submitted January 14, 1938. (Docket No. 95, Calendar No. 39,772.) Decided February 24, 1938.

Petition for declaratory judgment by City of Menominee, a municipal corporation, against County of Menominee, Board of Supervisors and others to

determine the power of the Board of Supervisors to appropriate certain highway moneys, for the construction of statutes and other relief. Judgment for plaintiff. Defendants appeal. Reversed and remanded for entry of judgment in accordance herewith.

*Kenneth O. Doyle,* for plaintiff.

*F. Earl Lanthier* and *George Barstow,* for defendants.

*Miller, Canfield, Paddock & Stone* (*Louis H. Fead,* of counsel), *C. W. Coates, John Walsh, H. Reade Smith* and *Lynn B. Mason, amici curiæ.*

NORTH, J. At a meeting of the board of supervisors of Menominee county in August, 1937, it adopted a resolution which in part reads:

"Resolved, in view * * * of the need of the McNitt road(s) of additional funds; that of one-half of the moneys heretofore paid and hereafter to be paid by the State of Michigan to the county of Menominee under the so-called * * * (weight tax act [Act No. 7, Pub. Acts 1934 (1st Ex. Sess.)]) and the gas tax act (Act No. 8, Pub. Acts 1934 [1st Ex. Sess.]) for the year 1937, there be apportioned (after deducting from said half the township road bonds payable therefrom during the year 1937) 50 per cent. thereof for the maintenance of roads heretofore selected, determined upon and taken over into the county road system under the McNitt-Holbeck-Smith act, all in accordance with the power and authority granted to the board of supervisors by the said * * * (weight tax act) and gas tax act."

The city of Menominee filed in the circuit court of Menominee county a petition for a declaratory judgment as to the power of the board of supervisors of Menominee county to appropriate to the county's

use, in the manner provided in the quoted resolution, money received from the State for highway purposes. The county and its proper officials were made defendants. They answered, admitting the facts as alleged in plaintiff's petition, and made a motion to dismiss on the ground that petitioner was wrong in its conclusion and contention that the board of supervisors did not have the power to make the appropriation. The circuit judge entered a declaratory judgment sustaining plaintiff's contention as to the law, and defendants have appealed.

The controversy is one of statutory construction. It involves Act No. 7, § 34, subd. (4), Pub. Acts 1934 (1st Ex. Sess.), so-called weight tax act (Comp. Laws Supp. 1935, § 4651), and Act No. 8, § 19, subd. (d[4]), Pub. Acts 1934 (1st Ex. Sess.), so-called gasoline tax act (Comp. Laws Supp. 1935, § 3594). Except for the catchline which prefaces Act No. 7, § 34, subd. (4), the two portions of the statutes noted above are identical. We quote from Act No. 7:

"(4) Maintenance of township highways taken over by counties. Not to exceed fifty per cent. of any funds remaining after the application of moneys for the foregoing purposes may be used for the maintenance of *additional mileage of township roads* in any county selected and determined upon in accordance with the provisions of act number one hundred thirty of the public acts of nineteen hundred thirty-one, known as the McNitt-Holbeck-Smith act, if and when so ordered by a three-fifths vote of the board of supervisors of such county."

Because of the identity of the two statutory provisions we refer herein only to the one quoted, unless otherwise indicated. The controversy in the instant case centers upon the meaning or construction to be given to the italicized words in the above quoted

subdivision (4). Plaintiff asserts, for reasons hereinafter noted, that under the proper construction of subdivision (4) the board of supervisors is without power to appropriate for highway use by the county road commissioners any portion of the highway fund to which this subdivision is applicable; but that instead all of such moneys should pass to the incorporated cities and villages of Menominee county and to the county itself under the provisions of subdivision (5) of the act. If plaintiff is right in its contention it would receive a larger amount of funds to be used for its street and highway purposes than it would in event the county's contention is sustained. And, of course, the county would receive a correspondingly smaller amount.

It is essential to a proper conception of this controversy that consideration be given to the development and purpose not only of the acts involved but of other legislative acts related thereto. Act No. 7, Pub. Acts 1934 (1st Ex. Sess.) (amendatory of Act No. 302, Pub. Acts 1915) is a part of our motor vehicle law which, among other things, provides for levying specific taxes upon motor vehicles and for the "disposition" of resulting funds. Section 7 of the act (Comp. Laws Supp. 1935, § 4638) provides for what is commonly known as the weight tax. Section 34 of this amendatory act (Comp. Laws Supp. 1935, § 4651) specifies the disposition to be made of the fund which results from this tax. It provides one-half of it is to be "returned to the county treasurers" by the secretary of State, "to be used for highway purposes under the jurisdiction of the county road commissioners subject to the approval of the county board of supervisors." It also provides the other half of the fund resulting from the weight tax is to be returned by the secretary of State

to the various county treasurers "in the same manner and proportion as the 50 per cent. first allocated in this section." But as to the second half of the weight tax fund the legislature in this section 34 of Act No. 7 has made specific provision as to the manner in which the same should be used or expended. In so providing the legislature specified five purposes and their order of priority, as follows: (1) Relief of assessments under Covert act (1 Comp. Laws 1929, § 4314 *et seq.*); (2) reduction of taxes on county at large for road and bridge bonds; (3) reduction of taxes for general highway township bonds; (4) maintenance of township highways taken over by counties; and (5) apportionment of balance of the weight tax between incorporated cities and villages of each county and the county, with specified purposes and priorities. The most casual reading of the pertinent portion of Act No. 7 convincingly discloses that the legislature definitely intended to specify the particular purposes with designated priorities for which one-half of the weight tax fund might be used in the respective counties, except as in a limited measure the power of appropriation was delegated to boards of supervisors. In the instant suit we are not concerned with the first three purposes designated by the legislature. Instead, as above noted, this controversy centers on what is the proper construction of subdivision (4) already quoted.

Section 34, subdivision (4) of Act No. 7 authorizes the board of supervisors by a three-fifths vote to use not to exceed 50 per cent. of the funds to which this section is applicable "for the maintenance of additional mileage of township roads in any county selected and determined upon in accordance with the provisions of Act No. 130, Pub. Acts 1931, known as

the McNitt-Holbeck-Smith act (Comp. Laws Supp. 1935, § 4018–1 *et seq.*)." This 1931 act marks the beginning of the complete transition of township roads from township control to county control as a part of our county road systems. (See title to act.) To accomplish this a definite, detailed and orderly method was adopted by the legislature and embodied in the statutory law of the State by this so-called McNitt-Holbeck-Smith act. Roughly the act may be outlined in part as providing for ascertaining the total mileage of township highways exclusive of streets and alleys in recorded plats as of January 1, 1931; and that on or before April 1, 1932, each county (acting through its road commission) shall "take over and incorporate into the county road system, twenty per cent. of the total township highway mileage * * * (and yearly thereafter shall) take over and incorporate into their county road system, an additional twenty per cent. of such township highway mileage until the entire township highway mileage * * * has been taken over and made a part of the county highway systems. * * * In the year next following the taking over of all such highways, all dedicated streets and alleys in recorded plats and outside of incorporated cities and villages shall be taken over and become county roads." Act No. 130, § 2, Pub. Acts 1931.

It is a matter of common knowledge that, as a result of the above statutory provisions, annually during the transition period the maintenance of thousands of miles of what had theretofore been township highways was transferred from the townships to the respective counties. The resulting financial burden assumed by the counties is obvious. To care for this situation section 5 of the McNitt-Holbeck-Smith act provided:

"The several counties of the State shall receive from the State highway department funds the following amounts in the proportion and according to the methods of distribution set forth in section six hereof: Two million dollars for the calendar year ending December thirty-one, nineteen hundred thirty-two; two million five hundred thousand dollars for the calendar year ending December thirty-one, nineteen hundred thirty-three; three million dollars for the calendar year ending December thirty-one, nineteen hundred thirty-four; three million five hundred thousand dollars for the calendar year ending December thirty-one, nineteen hundred thirty-five; four million dollars for the calendar year ending December thirty-one, nineteen hundred thirty-six; and four million dollars for each calendar year thereafter."

As bearing upon the issue in the instant case, it is worthy of note that as a part of the transition plan the legislature in the McNitt-Holbeck-Smith act provided for an annual increase of funds payable to the counties as the mileage of township roads taken over and added to the county road systems annually increased.

Act No. 7, § 34, subd. (4), hereinbefore quoted, and the corresponding provision in Act No. 8 are taken almost literally from Act No. 41, § 19-a, subd. (4), Pub. Acts 1932 (1st Ex. Sess.). In this last cited subdivision (4) of section 19-a there appears for the first time in this phase of our statutory law the expression the construction of which gives rise to the instant suit, that is the expression "for the maintenance of additional mileage of township roads in any county selected and determined upon in accordance with the provisions of" the McNitt-Holbeck-Smith act. Act No. 41 was given immediate effect on May 17, 1932. It is interesting and quite persuasive to note that this legislative action was taken almost

immediately after the counties under the McNitt-Holbeck-Smith act had taken over the first 20 per cent. of the township highway mileage on April 1, 1932. When the legislature passed and gave immediate effect to this Act No. 41 it obviously was mindful that the counties had but recently taken over 20 per cent. of the burden of maintaining township highways and annually thereafter an additional 20 per cent. would be taken over until the county systems had finally taken over the total burden of maintaining the township highway mileage. It is also apparent from section 8 of the McNitt-Holbeck-Smith act the legislature foresaw that the specific appropriations therein made would be inadequate to meet the total of highway needs; and so in the McNitt-Holbeck-Smith act it continued to provide that the townships might levy a property tax for township highway purposes. But by section 11 of the act it was provided that the township's power to levy such tax should be reduced during each year of the first three years of the transition period until (except for the purpose of meeting highway obligations) it was reduced to three mills on each dollar's taxation valuation. Surely it is a reasonable conclusion that in Act No. 41, Pub. Acts 1932 (1st Ex. Sess.), the legislature sought to provide additional funds for the use of the highway agencies which were to become responsible for the maintenance of what up to that time had been township highway mileage. The counties (under the McNitt-Holbeck-Smith act) had been designated as such agencies.

The acts under consideration are outgrowths or developments of the 1932 act; and it is difficult to resist the conclusion that when the legislature in these acts provided a county, by a three-fifths vote of the board of supervisors, might use a limited por-

tion of the available highway funds "for the maintenance of additional mileage of township roads in any county selected and determined upon in accordance with" the McNitt-Holbeck-Smith act, it was not pursuing its general policy of providing the various highway agencies (*i. e.,* the counties acting through their road commissioners) additional funds with which to meet the additional burden.

The construction of the statute for which appellee contends is that since the transition of township roads to the various county road systems has been fully completed (*i. e.,* all township roads have been taken over) there is no longer "additional mileage of township roads" to be "selected" and taken over by the counties, and therefore the boards of supervisors no longer have the power to appropriate any portion of the highway funds available under Act No. 7, § 34, subd. (4), Pub. Acts 1934 (1st Ex. Sess.), and the corresponding provision in Act No. 8, Pub. Acts 1934 (1st Ex. Sess.), for use by their county road commissioners. Appellee's contention is stated in its brief as follows:

"Plaintiff asserts that the legislature intended that such money (after proper application to priorities not affected by the instant case) shall not be used for the maintenance of such *former* township mileage, but that they shall be used only for the maintenance of township mileage selected and designated in any one year *additional* to the 20 per cent. of township mileage which it was mandatory (under the McNitt-Holbeck-Smith act) for the county road commission to take over annually and if the commission did not *take over more* than such 20 per cent. annually, the board of supervisors had no authority to apportion any of the remaining funds otherwise than between the county and the incorporated cities and villages within the county pursuant to subdivi-

sion (5) of both acts, and that at all events when the calendar year 1936 ended, the authority of the board of supervisors to apportion any of such moneys for the maintenance of township roads or for 'additional mileage' of township roads ceased.''

We cannot accept the quoted contention based upon the assumption that the legislature in passing the McNitt-Holbeck-Smith act contemplated that more than 20 per cent. of the township highway mileage might be taken over in a given year. Instead the act specifies that beginning in 1932 the counties annually shall take over 20 per cent. of the township highway mileage, neither more nor less, although it may be assumed that slight deviation from the exact amount would be considered substantial compliance. Be that as it may, there is no obvious reason for any substantial deviation from the exact provisions of the statute, and hence there is no apparent reason for assuming that the legislature went out of its way to provide a separate fund for which there could be no use except in the event of violation of the statute by the highway authorities.

Further appellee's contention just above quoted that ''when the calendar year 1936 ended, the authority of the board of supervisors * * * ceased'' is, we think, wholly derogatory of the purpose of the legislation. Appellee's contention would lead to this result. Immediately upon the total burden of maintenance of township roads being transferred to the county, its power under subdivision (4) to appropriate to any highway agency any portion of the highway funds to be used in the maintenance of these roads ceased, i. e., the statutory provision became inoperative in 1936. The provision, so construed, to say the least is somewhat incongruous. Further, the

fact that the legislature re-embodied these provisions in acts passed by it in 1937 (see Acts No. 320 and No. 340, Pub. Acts 1937) militates much against appellee's contention that the authority of the board of supervisors to act under subdivision (4) ended in 1936.

Nor can we accede to appellee's alternative contention that the right of the board of supervisors to appropriate highway funds under Act No. 7, § 34, subd. (4), Pub. Acts 1934 (1st Ex. Sess.), and the corresponding provision of Act No. 8 was intended by the legislature to apply only to township highway mileage which the county road commission had "selected and designated" to be taken into the county road system, but which had *not yet been taken over by the county.* Appellee, assuming such to be the proper construction, concludes:

"Such mileage was not entitled to maintenance from McNitt-Holbeck-Smith money until taken over. Yet it was contiguous to the county road system. It ought to be maintained in reasonable condition for county roads before it could be taken over. Hence the legislature authorized the board of supervisors to maintain it as 'additional mileage selected and determined upon' in accordance with the McNitt-Holbeck-Smith act."

We do not find in the statute any justification for appellee's deduction.

In the companion case of *City of Iron Mountain v. Dickinson County Road Commissioners, post,* 213, an *amicus curiæ* brief, which is also considered in this case, has been filed in support of appellee's contention. This *amicus curiæ* brief asserts as a proper construction of the controverted statutory expres-

sion a construction which differs somewhat from any of those hereinbefore noted.  We quote:

"It is our contention that the words 'additional mileage of township roads' in subdivision 4 of Acts No. 7 and No. 8 of the (first) extra session of 1934 means the remaining mileage other than the 20 per cent. of the township highways taken over annually by the county road commissions."

Not only is this suggested construction not justified by the context of the respective acts, but we think it is in direct conflict with the acts.  In order that this interpretation of the *amicus curiæ* might be accepted as correct the statutory provisions would have to be changed by including the word below inclosed in parentheses and by so doing the pertinent parts of Acts No. 7 and No. 8 would be changed to read:

"For the maintenance of additional mileage of township roads in any county (*not*) selected and determined upon."

Such a distortion of legislative language is not consonant with any sound rule of statutory construction.

The sense in which the legislature used the controverted expression "additional mileage of township roads" must be determined in the light of known facts concerning the development of highways in this State as accentuated, if not necessitated, by the public's use of the motor vehicle.  Not so many years ago all rural highways were township roads.  They were laid out, constructed and maintained by the townships.  The extent and character of roads was almost wholly a matter of local concern.  Responsibility was therefore lodged in the townships.  But with the advent of the motor vehicle the question of

highways ceased to be one principally of local concern.  Highway construction and maintenance became one of general public importance; and then, naturally if not necessarily, rapidly followed a transition of the responsibility for highways to the larger governmental units—to the counties and to the State at large.  Today we have no township roads.

In part the method of transition was charted by the McNitt-Holbeck-Smith act.  By a fixed plan extending over a period of years this act provided for complete termination of township highway control. Gradually and systematically the township road mileage was diminished.  The mileage taken from the townships was embodied in the county road systems as "additional mileage of township roads." This we think clearly fixed the meaning of the qualifying word "additional" as used in the statutory expression "additional mileage of township roads."

It is fair and reasonable to assume that some proper purpose prompted the legislature in continuing to designate the township highways as such even after they were taken over into the county road systems.  County road systems already existed (1 Comp. Laws 1929, § 3976 *et seq.*).  They comprised the more generally traveled highways of the counties.  The legislature evidently saw sufficient reason for keeping in a class by themselves the "additional mileage of township roads" when these lesser used roads were transferred from the townships to the county systems.  By so doing the legislature could and did require the counties (notwithstanding its own system of county roads) to expend certain highway funds (if used at all by the county under subdivision [4]) in the maintenance of "additional mileage of township roads" which had become a part of the county systems.  This (or possibly some more perti-

nent reason), we think, fairly accounts for the use of the quoted expression, and tends to sustain appellants' contention. It also seems to answer fairly well the following portion of appellee's argument:

"From an examination of (Act No. 7, § 34, subd. 5 (e-2), Pub. Acts 1934 (1st Ex. Sess.), which provides for the maintenance of additional mileage of township roads selected and determined upon in accordance with the McNitt-Holbeck-Smith act and for the widening, improvement and construction of county roads, it is inconceivable that the legislature would have used such phraseology when it was only necessary to insert the word 'maintenance' before the word 'widening' if it intended the funds for maintenance of county roads.

"When the township roads were entirely taken over under the McNitt-Holbeck-Smith act they became for all purposes county roads and there could be no purpose in making such distinction between such township roads (taken over under the McNitt-Holbeck-Smith act) and county roads as the legislature made in subsection (5)."

We are in accord with the following quoted from the *amicus curiæ* brief filed in support of appellants' position:

"The (controverted) provisions (of Acts No. 7 and No. 8) present no difficulty if read fairly. They were intended to give the board of supervisors a voice in ear-marking the funds for each of the three purposes set out; and particularly to conform to the general trend of the legislation to impose upon the board of supervisors the responsibility and to give it the power to do what was necessary to maintain the converted township mileage."

And it may be noted that the amendments to Acts No. 7 and No. 8 embodied in Acts No. 320 and No. 340, Pub. Acts 1937, broaden the power of boards of

supervisors by extending to them the right to appropriate highway funds under section 34, subdivision (4) of Act No. 320 and the corresponding provision in Act No. 340 so that it now includes the additional power to appropriate ''for the maintenance of city and village streets.''

We are advised by appellee's brief that a substantial majority of the counties have construed the controverted statutory provisions in accordance with its contention; and we understand that opinions issued from the attorney general's office have agreed such is the correct construction. While we have given these circumstances due consideration, we have not been able to find that such construction accords with either the context or the purpose of the legislative act.

Our consideration of the detailed and somewhat involved pertinent provisions of the related statutes, as well as the particular statutory provisions directly involved in this suit, brings this conclusion. When the legislature by the McNitt-Holbeck-Smith act adopted the plan for all township highway mileage being transferred to and made a part of the respective county road systems, it (for some reason or reasons that it deemed sufficient) also provided for a separate classification of this township mileage as a distinct ''integral part of the county highway system.'' (See section 4 of McNitt-Holbeck-Smith act.) These township roads so taken over have come to be designated as the ''McNitt roads.'' Continuing to designate and consider this ''additional mileage of township roads'' as a classification within the county system of which it has become a part, enabled the legislature to make specific provisions for such township roads which it otherwise could not have made. And it is only by so construing the statutory provi-

sions out of which this suit arises that various inconsistencies and absurd consequences can be avoided. Such a construction is necessitated by the context and purpose of these statutes. It sustains appellants' contention.

The Menominee county board of supervisors in passing the quoted resolution acted within its statutory powers. Judgment to the contrary in the circuit court is reversed. The case is remanded for the purpose of entering a declaratory judgment in accordance herewith. The question being one of public concern, no costs are awarded.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.